# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY REAVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 14-40100-TSH |
| DEPARTMENT OF CORRECTION, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

September 20, 2018

FINDINGS AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, Timothy Reaves, ("Plaintiff") files this action against the Defendants for claims related to his treatment while incarcerated in various Department of Corrections ("DOC") institutions. The defendants were in two categories: (1) the DOC Defendants and (2) the Medical Defendants. The DOC Defendants include the DOC, Thomas Turco,[1] Carol Higgins O'Brien, Stephanie Collins, Pamela MacEachern, Michael Rodrigues, and Sheila Kelly.[2] The Medical Defendants have settled with the Plaintiff.

Background[3]

---

[1] Thomas Turco is substituted for Carol Higgins O'Brien for claims asserted against her in her official capacity pursuant to Fed. R. Civ. P. 25(d).
[2] Sheila Kelly has replaced John Morin as the Deputy Superintendent at MCI-Shirley. She is therefore automatically substituted for Mr. Morin as a defendant where he was sued in his official capacity. *See* Fed. R. Civ. P. 25(d).
[3] The Court declines to strike allegations prior to July 7, 2012 as barred by the three year statute of limitations because I find that the continuing violation doctrine applies in this case where "at least one discriminatory act occurred within the limitations period, [ ] the alleged timely discriminatory act has a substantial relationship to the alleged untimely discriminatory act, and [ ]the otherwise time-barred events did not trigger his 'awareness and duty' to assert his rights." *Ocean Spray Cranberries, Inc. v. Massachusetts Com'n Against Discrimination*, 441 Mass. 632, 642-43 (2004); s*ee*

The Plaintiff has been incarcerated since 1996 and is serving a life sentence in the Massachusetts DOC. He has been a quadriplegic throughout his incarceration and is hearing impaired. The relevant institutions where Plaintiff has been housed for purposes of this action are Bridgewater State Hospital ("Bridgewater") from 2011 through 2014, Souza Baranowski Correction Center ("Souza Baranowski") from 2014 until 2016, and the Massachusetts Correctional Institution at Shirley ("MCI Shirley") from 2016 until present. During Plaintiff's incarceration his health has significantly decreased. He can no longer brush his teeth, feed himself, sit in a wheelchair, and showers on a stretcher,

Plaintiff has alleged the following counts: failure to provide adequate medical care in violation of the 8th Amendment (Count I) and Article 26 Of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts (Count II); reasonable accommodations in violation of the Americans with Disabilities Act (Count III), the Rehabilitation Act (Count IV) and Article 114 (Count V); unlawful conditions of confinement in violation of the 8th Amendment (Count VI) and Article 26 of the Declaration of Rights (Count VII); failure to protect in violation of the 8th Amendment (Count VIII) and Article 26 (Count IX); and violation of Plaintiff's due process rights provided by the 14th Amendment (X) and Articles 1, 10, and 12 of the Declaration of Rights (Count XI); intentional infliction of emotional distress (Count XIV); and violation of the Massachusetts Civil Rights Act ("MCRA") (Count XII). Both parties have filed motions for

---

*Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009)( because the "very nature" of the claims "involve[ ] repeated conduct" the "component acts" alleged to have occurred "outside the filing period may be considered.")(quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-17, 122 S. Ct. 2061 (2002)); *see Maldonado-Catala v. Municipality of Naranjito*, 876 F.3d 1, 9 (1st Cir. 2017)(hostile work environment claims are "'[t]he classic example of a continuing violation' because the actionable wrong consists of an accumulation of 'individual acts that, taken together, create the environment.'")(quoting L*edbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 638 (2007)); *see also Clark v. Clarke*, No. CIV.A. 11-11490-RWZ, 2013 WL 1144901, at *7 (D. Mass. Mar. 18, 2013) (applying the continuing violation doctrine to claims based on Eighth Amendment claims over seven years).

summary judgment, discussed below with the exception of Count XII, which Plaintiff's concedes.[4] Accordingly, the Defendants motion for summary judgment as to the Count XII is granted.

In a motion for summary judgment it is the moving party's burden to show an absence of a genuine issue as to any material fact on the record. *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997). A "genuine" issue is one which a rational factfinder could resolve in either direction, and a "material" fact is one that could change the case's outcome. *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1,5 (1st Cir. 2018), *review denied*, 885 F.3d 52 (1st Cir. 2018). If the moving party also bears the burden of proof at trial, he must "demonstrate every element of his case such that 'no reasonable trier of fact could find other than for [him].'" *Harley-Davidson Credit Corp. v. Galvin*, 807 F.3d 407, 411 (1st Cir. 2015). The court must view the evidence in the light most favorable to the nonmoving party in assessing each motion. *Tolan v. Cotton*, 134 S. Ct. 1861 (2014).

## Inadequate Medical Care (Counts I & II)[5]

To establish an Eighth Amendment violation based on the failure to provide adequate medical care, the prisoner must satisfy two prongs: "(1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." *Kosilek v. Spencer*, 774 F.3d 63, 82; *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[D]eliberate indifference 'defines a narrow band of conduct' . . . and requires evidence that the failure in treatment was purposeful." *Kosilek*, 774 F.3d at 83 (quoting *Feeney v. Corr. Med. Servs. Inc.*, 464 F.3d 158, 162 (1st Cir. 2006).

---

[4] The Defendants filed their motion as a motion to dismiss for failure to state a claim, or for summary judgment Doc. No. 214. Because the Defendants cite to material outside of the pleadings including a number of attached exhibits, the Court treats the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

[5] To the extent the Plaintiff asserts a deliberate indifference claim under Article 26 of the Massachusetts Declaration of Rights, I analyze together with the Eighth Amendment claim because "the rights guaranteed under art. 26 are at least equally as broad as those guaranteed under the Eighth Amendment[]".. *Michaud v. Sheriff of Essex Cty.*, 390 Mass. 523, 534 (1983).

For purposes of this motion, the DOC Defendants concede that Plaintiff has objectively shown that his deprivation is sufficiently serious. Defendants argue instead that Plaintiff has failed to show that the Defendants knowingly disregarded or failed to provide available remedies because they lacked the responsibility to intervene in a meaningful way. I disagree.

Prison officials are not be relieved of a duty to provide adequate medical care by contracting that responsibility out to private medical vendors. *See West v. Atkins*, 487 U.S. 42, 56 (1988)("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody"). The DOC has the authority and the obligation to ensure contract compliance by the medical providers with regards to the adequacy of their care. Specifically, Collins, as the Associate Deputy Commissioner of Clinical Services, oversees the medical services through regular meetings, audits, review of records, and may impose sanctions to remedy services deemed to be inadequate compared to community standards of care. Furthermore, the record shows that she was aware of, and involved in the requested accommodations and grievances filed by Plaintiff. *See Soneeya v. Spencer*, 851 F. Supp. 2d 228, 243 (D. Mass. 2012)("A prison official is a proper defendant in an Eighth Amendment suit if that official was personally involved in the decision to deny treatment for [the inmate's] serious medical need. Personal involvement may be established, by showing that the official knew of the prisoner's need for medical care and yet failed to provide the same.")(internal quotation marks and citation omitted)).

The record in this case does not show disagreements as to certain treatment decisions but a pattern of denying, delaying, and/or interfering with the Plaintiff's medical care over a prolonged and significant period of time at various DOC facilities. *See Feeney*, 464 F.3d at 162 ("disagreement on the appropriate course of treatment…falls short of alleging a constitutional

violation")(internal citation omitted); *see Battista v. Clarke*, 645 F.3d 449, 453 (1st Cir. 2011)("it is enough for the prisoner to show a wanton disregard sufficiently evidenced by 'denial, delay, or interference with prescribed health care.'")(quoting *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991)). For example, the record shows that Plaintiff is not being provided adequate range of motion therapy or as often as he should. There are inconsistencies with the documentation of when Plaintiff is being provided therapy as well as his "refusal" of therapy. It appears that Plaintiff has refused range of motion therapy because the DOC denied his request to be given therapy after his bath when he is clean. Additionally, since the entry of a preliminary injunction in July of 2016, the Plaintiff has seen a spinal cord specialist only twice, the Plaintiff appears to continue to be in chronic constipation with no bowel management plan or system in place regarding emergency response in the event Plaintiff suffers from autonomic dysreflexia, and the Plaintiff does not have working hearing aids. This absence of care as opposed to a dispute regarding two or more choices of care supports this claim against the DOC.

Plaintiff's condition and overall health has significantly declined and there is evidence to support a link between this decline and the alleged inadequate care. The DOC has been aware of these issues including the lack of medically necessary treatment plans mentioned above since at least the filing of this action in 2015. For all of these reasons, I find that there are triable issues as to the DOC's deliberate indifference and decline to grant summary judgment as to Counts I and II for either Party.

*Qualified Immunity*

Because the Plaintiffs have confirmed that they are only seeking injunctive relief for Counts I and II, qualified immunity is not available as a defense. *Ex parte Young 209 U.S. 123 (1908)*.[6]

Reasonable Accommodations (& Disability Discrimination) Counts III, IV & V

The record supports a reasonable conclusion that MacEachern, Rodrigues, and Morin were aware of the Plaintiff's significant limitations and failed to provide reasonable accommodations at Bridgewater, Souza Baranowski, and Shirley. "The ADA, the RA, and art. 114 of the Massachusetts Constitution all prohibit the same conduct: disabled persons may not be excluded from participation in, or be denied the benefits of services, programs, or activities, and they may not be subjected to discrimination." *Shedlock v. Dep't Of Correction*, 442 Mass. 844, 854 (2004)(internal quotation marks omitted)(quoting 42 U.S.C. § 12132. 29 U.S.C. § 794. Art. 114). To establish a Title II ADA claim, the plaintiff must show

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Buchanan v. Maine*, 469 F.3d 158, 170–71 (1st Cir. 2006)(quoting *Parker v. Universidad de Puerto Rico*, 225 F. 3d 1, 5 (1st Cir. 2000)).[7]

---

[6]. Under the doctrine of Ex parte Young, prospective relief against a state officer in his official capacity to prevent future constitutional or federal statutory violations is not barred by the Eleventh Amendment

[7] "Title II of the ADA was modeled after Section 504 of the Rehabilitation Act, which contains very similar language barring discrimination against individuals with disabilities by any program or activity receiving federal financial assistance." *Pollack v. Reg'l Sch. Unit 75*, 886 F.3d 75, 80 n. 2 (1st Cir. 2018). Article 114 was also modelled after the Rehabilitation Act and "prohibits such exclusion or discrimination 'under any program or activity within the commonwealth.'" *Shedlock*, 442 Mass. at 855 n. 7 (quoting *Layne v. Superintendent of Mass. Corrections Inst.*, 406 Mass. 156, 159 & n. 3 (1989)); s*ee Guckenberger v. Boston Univ.*, 974 F. Supp 106, 150 (D. Mass. 1997). For purposes of this motion the Court analyzes these claims together.

The main issues regarding the claims in this case revolve around whether Plaintiff sufficiently requested accommodations such as access to the outdoors, socialization, access to programs, and hearing devices, and whether or not the Defendants offered Plaintiff reasonable accommodations that he declined to use.

As a preliminary matter, I decline to grant summary judgment for Defendants on the basis that Plaintiff failed to exhaust his administrative remedies. The record shows that specific written requests are not required for the DOC to make accommodations when such accommodations are obvious. Additionally, verbal requests for accommodations are permitted. The Plaintiff's disability is obvious and the record shows that the DOC Defendants were aware of it. Furthermore, the characteristics of Plaintiff's disability is such that he is dependent on prison officials and providers to physically get anywhere. It follows that the DOC was aware of the fact that Plaintiff had not been given access to at least some of these accommodations because the DOC Defendants had not transported him to them. Additionally, the record shows that Plaintiff made numerous verbal and written requests at different times in the various facilities. For example, at Bridgewater he filed written requests concerning programming and hearing accommodations and verbally requested to be brought outside. At Souza Baranowski he filed a written request for access outside, referencing his denial of such access for years, and requested a shower in a shower.

To the extent that Defendants argue that Plaintiff was not discriminated against at Souza Baranowski based on his denial of access to services and programs, I disagree. Plaintiff was placed in the health services unit because of his disability. In contrast to the typical inmates housed there temporarily, Plaintiff was there indefinitely. I am unpersuaded by the Defendants attempt to shield themselves from liability for discrimination by comparing apples and oranges. It is one thing to

limit or deny access to services and programs for a temporary period of time and another to deny access to such activities indefinitely.

The Defendants also argue that Plaintiff has been offered certain accommodations and has either denied them and/or that his requested accommodations are not feasible. There is no dispute that the Plaintiff has been disrespectful and difficult towards prison officials. While recognizing the challenges to the DOC, I find that it is arguable that the Plaintiff's denials support a conclusion that the accommodations were not meaningful offers because they resulted in unnecessary hardship to him. *See Shedlock v. Dep't Of Correction*, 442 Mass. 844, 854–55 (2004)(an interpretation "that a violation could only be premised on conduct that resulted in a complete exclusion from programs or total denial of benefits, is overly narrow. At some level, the difficulties experienced in attempting to access programs and services become so great…that a plaintiff's access has functionally been denied, even if the plaintiff could, at least in theory, get to and from the program or services."). Additionally, there are alternative accommodations suggested by Plaintiff which appear to be reasonable creating a dispute of fact as to the feasibility of certain accommodations. *See* 42 U.S.C. §12131(2)( a public entity may be required to make "reasonable modifications to rules, policies, or practices" to accommodate a person with a disability); *see Shedlock*, 442 Mass. at 856 ('courts must be mindful of the necessary balance between the ADA's worthy goal of integration and a prison's unique need for security, safety, and other penological concerns.")(quoting *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004))

I find that there is evidence to support a reasonable inference that the Plaintiff has been denied access to, or participation in certain programs, services, and/or activities as a result of his disability and I decline to grant summary judgment for either party.

## Conditions of Confinement (Counts VI & VII)

These counts relate to Plaintiff's confinement at all three institutions. "The Constitution 'does not mandate comfortable prisons' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 24000 (1981)). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id*. (quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480 (1993). The plaintiff must meet both the objective prong, showing that "the conditions of his confinement deny him the minimal measure of necessities required for civilized living" and the subjective prong, showing that "the defendant was deliberately indifferent to inmate health or safety." *Surprenant v. Rivas*, 424 F.2d 5, 18 (1st Cir. 2005)(quoting *Farmer*, 511 U.S. at 836-37, 114 S. Ct. 1970).

The Plaintiff's disability leaves him with a minimal ability to exert independence and he is almost, if not entirely, dependent on the prison officials and medical professionals to complete his basic needs such as feeding and bathing. However, as previously discussed, the Plaintiff has been denied access to basic human needs such as fresh air, adequate health care, socialization, educational programs, and an ability to move around independently. The combination of these deprivations is more than what is expected after an inmate is incarcerated. *See Hudson v. McMillan*, 503 U.S. 1, 8-9, 112 S. Ct. 995, 1000 (1992) (the conditions must be more than "routine discomfort [as] part of the penalty criminal offenders pay for their offense against society."). These conditions under which the Plaintiff has been forced to exist, are exacerbated by the fact that he has been exposed to them for years. *See Hutto v. Finney*, 437 U.S. 678, 686, 98 S. Ct. 2565, 2571

9

(1978)("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.").

Furthermore, the record shows that Collins, MacEachern, Rodrigues, and Morin were aware of at least some of the conditions. Rodriguez acknowledged Plaintiff's isolation and the harm that can cause, and MacEachern acknowledges her knowledge of some of the assaults on the Plaintiff.

I find that at a minimum, the record raises a triable issue of fact as to whether the combination of conditions that Plaintiff has been exposed to during the seven year period relevant in this case, violated the Eighth Amendment.[8]

## Failure to protect (Counts VIII & IX)[9]

This count only implicates MacEachern and the events that transpired while the Plaintiff was at Bridgewater State Hospital. To establish an Eighth Amendment violation for a prison official's failure to protect

> the deprivation alleged must be, objectively, sufficiently serious…the plaintiff must demonstrate he was incarcerated under conditions imposing a substantial risk of serious harm. Second, the plaintiff must show that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health or safety. That state of mind is more blameworthy than negligence.

*Burrell v. Hampshire Cty.*, 307 F.3d 1, 8 (1st Cir. 2002)(citing *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970 (1994))(internal quotation marks and citations omitted). Generally, "[w]hether an official had the requisite knowledge is a question of fact subject to demonstration in

---

[8] Again, to the extent the DOC argues that efforts have been made to provide Plaintiff access to these needs, specifically since July of 2016, I find the reasonableness of these offers to be a question of fact.
[9] The rights guaranteed under Article 26 are "at least equally as broad as those guaranteed under the Eighth Amendment." I analyze these claims together for purposes of this motion. *Torres v. Comm'r of Correction*, 427 Mass. 611, 615–164 (1998); *Michaud v. Sheriff of Essex County,* 390 Mass. 523, 534 (1983).

the usual ways, and a factfinder may conclude that the official knew of a substantial risk from the very fact that it was obvious. *Farmer*, 511 U.S. at 826.

At the time Plaintiff was housed at Bridgewater, MacEachern was the Deputy Superintendent of Patient Services. She admits that it was in part her responsibility to protect inmates from assaults and could determine who should be placed in a single cell.[10] Inmates with "severe medical disabilities,…individuals likely to be victimized or exploited" were the first to be considered for single cell housing.

Although MacEachern denies being involved in investigations of inmate or patient grievances, she acknowledges that she was aware of at least three documented assaults against Plaintiff while at Bridgewater. The record shows that she was present at the risk management meetings where at least six documented incidents involving Plaintiff were discussed and that she reviewed Plaintiffs classification, which included documented assaults against him, and determined Plaintiff should remain at Bridgewater. Plaintiff was assaulted approximately 10 times by other inmates, who were free to walk around the unit while residing at Bridgewater. The Plaintiff's disability and inability to defend himself was both known by MacEachern and obvious. It is undisputed that Plaintiff is not a typical run of the mill inmate. His obvious health conditions not only render him defenseless but expose him to serious risks of injury as a result of assaults which may not generally create a substantial risk of harm to other inmates. *See Farmer*, 511 U.S. at 143-44 (it does not matter whether…a prisoner faces an excessive risk of attack for reasons personal to him…").

For example, multiple instances of an inmate licking another inmate's body or throwing urine on an inmate may not typically rise to the level of a substantial risk of harm, but here, because

---

[10] MacEachern asserts that the Deputy Superintendent of Operations oversaw security.

11

of the fact that Plaintiff has numerous open wounds covering his body, such an act places him at serious risk of contracting diseases. Additionally, threatening gestures or a punch to the stomach, because of Plaintiff's fragility and inability to defend himself, may give rise to a substantial risk of harm. *Contra Burrell v. Hampshire County*, 307 F.3d 1, 8-9 (1st Cir. 2002)(no reasonable jury could conclude that the prison officials acted with deliberate indifference by not providing additional protection because the plaintiff did not request protective custody, the officials knew he was trained in martial arts and that he could lock his individual cell door to protect himself).

For these reasons, I find that the record raises a plausible inference of deliberate indifference and a question of fact as to the reasonableness as the responses.

*Qualified Immunity (Counts VI, VII, VIII, IX)[11]*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815 (2009)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)). The question here is whether a reasonable prison official could have believed that the actions taken were lawful, in light of clearly established law and the information that the individual Defendant possessed. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3039 (1987).

As to Counts VI and VII, the Plaintiff charges that his conditions of confinement at all three institutions were so poor that the violated the Eight Amendment. In Counts VIII and IX, the Plaintiff alleges that MacEachern failed to protect him from harm while he was at Bridgewater State Hospital. The Constitutional right to be free from cruel and unusual punishment with respect

---

[11] Plaintiff is no longer seeking damages against O'Brien on Counts VI & VII. *See* Doc. No. 230, p. 23-24.

to conditions of confinement and a failure to properly protect are clearly established. See *Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir. 1992)(deliberate indifference established by actual knowledge of or willful blindness to elevated risk of harm). Further, the obligation to protect Mr. Reeves from harm from other prisoners is clearly established, *Farmer v. Brennan,* 511 U.S. 825 (1994).

Due Process (Counts X & XI)

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393 (2005). "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement…[is] the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Id*. at 223, 125 S. Ct. at 2394 (quoting *Sandin v. O'Conner*, 515 U.S. 472, 484, 115 S Ct. 2293, 2300 (1995)). The question to be determined is whether the phase system "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. (quoting *Sandin*, 515 U.S. at 484, 115 S Ct. at 2293).

I do not find that Plaintiff has a protected liberty interest in not being subjected to the phase system. Recognizing the Plaintiff's argument that the possible duration of sanctions imposed could subject Plaintiff to an indefinite period of sanctions, the record does not show that that has been the case. While Plaintiff has been disciplined for a significant period of time at the three institutions, I find this to be consistent with the documented behavior of Plaintiff during his incarceration. Furthermore, while the denial of the limited privileges Plaintiff has access to create a hardship on Plaintiff, the DOC must be able to discipline the Plaintiff somehow for inappropriate

behavior. The Plaintiff has not shown that the phase system is a protected interest subject to the procedural safeguards and summary judgment as to Counts X & XI is granted in favor of the Defendants.

*Qualified Immunity*

Additionally, I find that based on the unique challenges presented by Plaintiff and the seemingly limited duration of sanctions imposed by the phase system, especially in consideration of the exposure to discipline by other inmates, that it was reasonable for the Defendants to believe that this conduct was lawful and not clearly proscribed by law. Accordingly, I find that this is a constitutional right that is not clearly established and the individual Defendants are entitled to qualified immunity.

Intentional Inflectional of Emotional Distress (Count XIV)

I find that there is insufficient evidence in the record, or in Plaintiff's submissions to support a reasonable conclusion that any Defendant intentionally inflicted severe emotional distress upon the Plaintiff.

**Order**

For the reasons set forth above, I grant the Defendant's Motion for Summary Judgment in part and Deny it in part. I grant the Defendants Motion for Summary Judgment on Counts X, XI, XII, and XIV, and deny it in all other respects. I deny the Plaintiffs Motion for Summary Judgment.

/s/ *Timothy S. Hillman*
TIMOTHY HILLMAN
DISTRICT JUDGE