UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TIMOTHY M. REAVES, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 4:15--CV-40100 |
| | ) | |
| DEPARTMENT OF CORRECTION, | ) | |
| ET AL., | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR DIRECTED VERDICT**

The defendants[1] hereby move **AT THE CLOSE OF THE DEFENDANT'S EVIDENCE**, pursuant to Fed. R. Civ. P. 50(a), that this Court direct a verdict for them on plaintiff's claims. As reasons therefore, there is no legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff as follows:

**THE DEFENDANTS RESERVE THE RIGHT TO SUPPLEMENT THIS MOTION IN ORAL ARGUMENT, WHICH IS REQUESTED.**

1. **COUNT 4, VIOLATION OF THE REHABILITATION ACT AGAINST THE DEPARTMENT OF CORRECTION**

The case law construing the ADA generally pertains to claims under the Rehabilitation Act. Calero-Cerezo v. U.S. Department of Justice, 355 F.3d 6, 19 (1st Cir. 2004). While Timothy Reaves (Reaves) was at Bridgewater State Hospital, he did not submit an accommodation request to be taken outside, to a common dayroom, or for program access. Other than one grievance requesting law clerk training—a program not being offered to anyone--he also did not submit a grievance for any of these things. He did not ask Pamela MacEachern for any of these accommodations in her direct interactions with

him. The Court should find that Reaves had not actually applied for any program under the Department of Correction's proper procedures and that he had not requested any such accommodations. Lue v. Moore, 43 F.3d 1203, 1205, 1206 (8th Cir. 1994). Consequently, there was no denial of Reaves' participation in such program by the Department of Correction and so Reaves' accommodation claims relating to Bridgewater must fail.

While Reaves was at the Souza Baranowski Correctional Center (SBCC), Department of Correction officials acted reasonably in assessing Reaves' accommodation requests. As stated by Michael Rodrigues, there was a legitimate penological concern underlying the decision not to transport Reaves throughout SBCC to some outdoor location with the chance of an encounter with a maximum security inmate and the risk of violence. Prison officials may discriminate between disabled inmates and non-disabled inmates if the disabled inmate's participation in a program, activity or other pursuit would pose a significant health or safety risk to others, the disabled inmate, or staff. School Bd. of Nassau Cnty v. Arline, 80 U.S. 273, 287 (1987). Given the complex, regimented movement schedule, it would have severely impacted SBCC operations and other inmates to freeze the entire prison on a routine basis while Reaves would have been transported throughout SBCC. The Court should consider that there was no readily available alternative for Reaves other than the accommodation that Mr. Reaves requested; and the impact on other inmates, staff, and the allocation of resources if the accommodation was afforded Mr. Reaves. (The balancing test of Turner v. Safley, 482 U.S. 78, 89-90 (1978) applies to ADA and Section

---

[1] Pamela MacEachern, Michael Rodrigues, and the Department of Correction.

3

504 claims. Gates v. Rowland, 39 F.3d 1439, 1446-47 (9th Cir. 1994). Prison officials are not required to provide accommodations that impose undue financial or administrative burdens. Southeastern Community College v. Davis, 442 U.S. 397, 406(1979). Lastly, Rodrigues states that due to Reaves' sentence structure, he was not eligible for the vocational programs being offered: a barber program, culinary arts, and a computer skills program. The Court should consider that Reaves was denied access to such programs because he was actually ineligible for such programs, not because of his disability.[2]

To recover compensatory damages Reaves must demonstrate that the state actually violated his constitutional rights under the Eighth and/or Fourteenth Amendments. U.S. v. Georgia, 546 U.S. 151, 159 (2006). The Court must evaluate what aspects of the state's alleged conduct violated the Rehabilitation Act and to what extent such misconduct also violated the Fourteenth Amendment. Id.

First, with respect to the **merits** of plaintiff's Rehabilitation Act claim, Reaves has failed to produce evidence to prove each element. For, example, he has failed to produce evidence that the Department of Correction denied Reaves access to the outdoors, to a shower, for socialization, and to prison programs with a discriminatory purpose, a required element of his claim. Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000). In order for his claim to survive, Reaves must allege causation between the alleged discrimination and his disability. Wilbon v. Michigan Dep't of Corr., No. 13-14404, 2015 WL 1004707, at *9 (E.D. Mich. Mar. 6, 2015), appeal dismissed (Jan. 14, 2016).

---

[2] Although for obvious reasons, Reaves could not have participated in either the barber

4

Furthermore, there has been insufficient evidence that alleged failures on the part of the Department rose to the level of a constitutional violation, thus abrogating sovereign immunity. U.S. v. Georgia, 546 U.S. 151, 159 (2006). Therefore, plaintiff has failed to establish a violation of the Eighth Amendment with respect to his not having been taken outside, given a shower, given access to a common dayroom for socializing or for program access. Farmer v. Brennan, 511 U.S. 825 (1994).

2. **COUNT 5 VIOLATION OF ARTICLE CXIV OF THE MASSACHUSETTS DECLARATION OF RIGHTS AGAINST PAMELA MACEACHERN AND MICHAEL RODRIGUES.**

Because there is no surviving claim against either Pamela MacEachern or Michael Rodrigues under the Massachusetts Civil Rights Act, G.L. c. 12, §§11H, 11I, Count 5 must be dismissed against both defendants. A court does not consider state constitutional claims if those claims are not accompanied by a claim under the Massachusetts Civil Rights Act. Cruz v. Collins, 46 N.E. 3d 114 (Unpublished) 2016 WL743809, n.10, citing Martino v. Hogan, 37 Mass.App.Ct. 710, 720 1990; FAR denied 419 Mass. 1106 (1995). Also, DO Corp. v. Town of Stoughton, 2013 U.S. Dist. WL6383035.

3. **COUNT 6 CRUEL AND UNUSUAL PUNISHMENT/CONDITIONS OF CONFINEMENT AGAINST PAMELA MACEACHERN AND MICHAEL RODRIGUES.**

The law provides that defendants, as public officials, and in particular, as prison officials, are entitled to assert the defense of qualified immunity. Procunier v. Navarette, 434 U.S. 555 (1978); Bonitz v. Fair, 804 F.2d 164, 166 (1st. Cir. 1986); Foster v. McGrail, 844

---

program or culinary arts program.

5

F.Supp. 16, 23-24 (D. Mass. 1994). Under qualified immunity, public officials are protected from liability for liability arising out of the exercise of their discretionary functions. Bergeron v. Cabral, 560 F.3d 1, 5 (1st Cir. 2009). The scope of qualified immunity "sweeps so broadly that 'all but the plainly competent or those who knowingly violate the law' are protected from civil rights suits for damages." Hegarty v. Somerset County, 53 F. 3d 1367, 1373 (1st Cir. 1995) (citation omitted). Malley v. Briggs, 475 U.S. 335, 341 (1986).

Qualified immunity analysis requires an analysis of (1) whether the evidence introduced by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the alleged violation. Moldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). The "clearly established right" factor requires the court to decide (1) whether the contours of the right [were] so clearly established that a reasonable official would understand what he was doing violates the right; and (2) whether in the specific context of the case, "a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." Maldonado, 568 F.3d at 269. In this context, the court must consider what Deputy Superintendents MacEachern and Rodrigues actually knew and whether their actions in light of what they knew were deliberately indifferent to an actual AND a known foreseeable risk of serious harm to Reaves.

The evidence introduced at trial, including, but not limited to that listed here, established that MacEachern had allowed within a few days of their submission two accommodation requests that Reaves had submitted. A third accommodation request, relating to hearing aids, was more medical in nature than being an accommodation request

and MacEachern was informed that the hearing aids had been provided to Reaves. Reaves had not filed any other written accommodation requests. In her direct interactions with Reaves, he never asked her to go outside, to a common dayroom area or to be given a shower. Reaves had filed 18 grievances. None of which concerned him being taken outside, given a shower, or for socialization. Reaves had requested to be given law clerk training. But there was no such program being offered. He had not filed any other written requests for access to any other activities or programs.

The evidence established that while he was at SBCC, Reaves submitted four accommodation requests relating to a request to be taken outside, for access to a common dayroom for socializing, to be given a shower, and for program access. The other inmates housed within the infirmary were not given outdoor access, or common room access, or activities and programs. Rodrigues initially had the impression that there were medical contraindications preventing the movement of Reaves out of his bed. Later, he was informed otherwise and so assessed the requests. SBCC is a maximum security prison. The inmates housed there have been so classified based upon the perceived need for high security. There are frequent inmate assaults occurring. There were concerns with the prospect of intermingling Reaves with that population. SBCC operated in a highly regimented manner. The prison is locked down periodically during each day to allow for the passage of certain categories of inmates throughout. It was not deemed feasible to consider including another prison lockdown period to allow for the traversing of Reaves throughout the prison to bring him outside, with the prospects of chance encounter with another inmate.

Regarding his shower request, the showers were measured and because Reaves must remain lying down it was determined that the showers were too small to fit a gurney to bring in Reaves.  Regarding programs, Reaves was tested and found to score too advanced to be eligible for academic programs.  Due to his sentence structure, Reaves was not eligible for vocational programs.  Beyond his ineligibility due to his sentence structure, there were three vocational education programs offered: a barbershop, culinary arts, and computer training.  Reaves was not capable of participating in either the barbershop or culinary arts program.  SBCC did not have the resources to provide one-on-one computer training and a volunteer could not be used to teach the subject to Reaves, as it would have resulted in a labor issue.  Rodrigues authorized inmate writing assistants to frequently interact with Reaves and directed that such assistants could play board games with Reaves.  And a special visiting arrangement was made whereby Reaves' nephew, an inmate at SBCC, was allowed to visit with Reaves—something not done for the other inmates in the infirmary.  On one occasion, it was suggested to Reaves that he be given a roommate, but he adamantly refused the suggestion and the subject was not thereafter considered.

Qualified immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only for transgressing bright lines." Wilson v. Layne, 141 F. 3d 111, 114 (4th Cir. 1998) Saucier v. Katz, 553 U.S. 194, 121 S.Ct. 2151, 2158 (2001), citing Priester v. Riviera Beach, 208 F.3d 919, 926-927 (11th Cir. 2000).  The defendants are immune from liability for violations of the plaintiff's civil rights if the defendants performed their official duties in the objective good faith belief that their actions

were proper and lawful. Even if a defendant made a mistake in the circumstances, the defendant is entitled to the immunity defense as long as his mistaken understanding was reasonable. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001).

Here, MacEachern had not known of Reaves' desire to go outside, be given a shower, for other socializing opportunities or access to programs. She is entitled to qualified immunity as a result.

Here Rodrigues was aware of Reaves' requests and considered each of them. He granted the request for a handicapped-accessible remote control to better facilitate Reaves' use of his television and radio and he arranged for books on compact disk to be provided to Reaves. However, for the reasons cited, primarily involving Reaves' safety and security within the unique SBCC setting, he was unable to provide outdoor access or access to a common dayroom area. He is entitled to qualified immunity.

Officials sued for constitutional violations do not lose their qualified immunity merely because they may have violated some statute or regulation or policy. Davis v. Scherer, 468 U.S. 183 (1984); Martino v. Hogan, 37 Mass. App. Ct. 710 (1994)(prison officials). Even if the defendant violated a statute, or regulation, or policy, the Court must afford him qualified immunity unless it also finds that he acted in blatant reckless disregard of the plaintiff's clearly established constitutional rights under the Eighth Amendment, because violations of statutes, regulations, or policies are not violations of the Eighth Amendment or any other constitutional provision. Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 546 (1998). Martino v. Hogan, 37 Mass. App. Ct. 710 (1994)(no

personal liability on Department of Correction employees, including superintendent and commissioner and damages cannot be awarded for failure to follow Department regulations and state statutes). In other words, a lawsuit for money damages cannot be based merely on the violation of a statute, or a regulation, or a policy. Loffredo, at 546.

### 4. COUNT 8, CRUEL AND UNUSUAL PUNISHMENT/FAILURE TO PROTECT CLAIM AGAINST PAMELA MACEACHERN.

Reaves has failed to prove each element of the deliberate indifference claim against MacEachern. Not every injury suffered by a prisoner translates into constitutional liability for the prison officials responsible for inmate safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In order to prove an Eighth Amendment claim, the plaintiff must submit evidence proving the following two requirements. First, the plaintiff must demonstrate that the alleged deprivation was, objectively, sufficiently serious, i.e., that he was incarcerated under conditions imposing a substantial risk of serious harm. Burrell v. Hampshire County, 307 F.3d 1, 8 (1st Cir. 2002). This is known as the *objective prong*. Second, the inmate must show that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health or safety. Burrell, 307 F.3d at 8. This is known as the *subjective prong*.

With respect to the *objective prong*, Reaves, must prove that the conditions of confinement constituted a serious deprivation of his basic human needs in contravention of contemporary standards of decency. Rhodes v. Chapman, 452 U.S. 337, 346 (1981). In the

failure-to-protect context, the objective prong does not impose upon prison administrators a duty to provide protection that is ideal, or of the prisoner's choosing. Prison administrators are by no means required to tailor a perfect plan for every inmate; while they are constitutionally obligated to provide some level of protection to inmates, these services need only be on a level reasonably commensurate with prudent professional standards. Allegations that simply reflect a disagreement on the appropriate course of action fall short of alleging a constitutional violation. The Eighth Amendment only proscribes conduct that is so inadequate as to shock the conscience. Kosilek v. Spencer, 774 F.3d 63, 82-3 (1st Cir. 2014) (en banc).

With respect to the individual who recurrently licked and kissed Reaves' feet, there was no proof offered of any physical harm to Reaves and so such conduct failed to meet the objective prong and so should not be factored into the question.

Prison officials "cannot be deliberately indifferent [under the Eighth Amendment] if they respond[ ] reasonably to the risk" of violence by other inmates. Burrell, at 8. The inquiry into the reasonableness of the defendant's conduct must "incorporate . . . due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." Id. (internal quotations omitted).

With respect to the *subjective prong*, deliberate indifference is a mental state akin to criminal recklessness. Suprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005). Proving subjective belief is not accomplished by asserting that a reasonable person should have known of the risk. "[A]n official's failure to alleviate a significant risk that he should have known about

but did not, while no cause for commendation, cannot . . .be condemned as the infliction of punishment." Farmer, at 838.

A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference. In other words, the Eighth Amendment does not outlaw cruel and unusual *conditions*; it outlaws cruel and unusual *punishments*. Farmer at 837.

Prison officials cannot be indifferent if they are unaware of the risk. But even if they are aware, they cannot be deliberately indifferent if they responded reasonably to the risk, even if the harm ultimately was not avoided. A response that was colorable and taken in good faith will negate deliberate indifference even if it were inadequate from an objective standpoint (and thus negligent). Burrell, 307 F.3d at 8.

Generalized threats of violence are insufficient to establish liability that the defendant was deliberately indifferent or that he responded unreasonably. Scott v. Dickhaut, 2013 WL 4017822 (D. Mass. May 24, 2013).

In the failure-to-protect context, the subjective prong of deliberate indifference defines a narrow band of conduct and requires evidence that the failure to protect was purposeful. Mere disagreements between prisoners and prison officials about the proper course of action, or even negligence will not rise to the level of cruel and unusual punishment. While deliberate indifference may also be exhibited by a wanton disregard to a

12

prisoner's needs, such disregard must be akin to criminal recklessness, requiring consciousness of impending harm, easily preventable.  A course of action that is presented by competent professionals does not exhibit a level of inattention or callousness to a prisoner's needs rising to a constitutional violation.  Kosilek, 774 F.3d at 83-4.

In addition, prison officials who actually know of a substantial risk to inmate safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.  Farmer, 511 U.S. at 844-45.  A prison official's duty under the Eighth Amendment is to ensure reasonable safety. However, the defendant's duty to ensure reasonable safety, does not impose on him personal liability for all activity or discretionary decisions of his subordinates or other staff members that, unknown to them, occurred locally in operations in the field. Martino v. Hogan, 37 Mass. App. Ct. 710, 719-720 (1994); Sanders v. Brewer, 972 F.2d 920, 923 (8th Cir. 1992).

It is hornbook law that government officials cannot be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) citing Robertson v. Sichel, 127 U.S. 507, 515-516 (1888)("A public officer or agent is not responsible for the misfeasance or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subordinates or servants or other persons properly employed by or under him, in the discharge of his official duties.")

Rather, a supervisor may be found liable under section 1983 only on the basis of his own acts or omissions. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st. Cir. 1994). In other words, a supervisor may be held liable for what he himself does (or fails to do) if his behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights. In addition, the plaintiff must not only show that the supervisor acted with deliberate indifference, but he also must affirmatively connect the supervisor's conduct to the subordinates' violative act or omission. A causal link between the supervisor's actions and the subordinate's actions may be forged if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct of a subordinate. Id.

Lastly, when evaluating the Eighth Amendment and deliberate indifference, security considerations inherent in the functioning of a penological institution must be given significant weight. Wide-ranging deference is accorded to prison administrators in the adoption and execution of policies and practices that in their judgment are needed to maintain institutional security. In consequence, no Eighth Amendment violation can lie where the prison official's decision is based on legitimate concerns regarding prisoner safety and institutional security. Kosilek, 774 F.3d at 83-4.

Here, there was only two other instances of inmate assaults, one by an individual having thrown urine at Reaves in April 2011 and another inmate having in July 2013 struck Reaves in the abdomen. The individual who threw urine at Reaves was immediately

separated from him and MacEachern transferred the inmate out of Bridgewater within days of the incident and there was never another assault upon Reaves by him.  Then, an approximate two-year period passed without any assaults upon Reaves.  The inmate who had struck Reaves in the abdomen on one occasion was prevented from ever having done so again.  There is simply no evidence that Pamela MacEachern ignored these incidents or failed to take timely responsible corrective action in response.  There was no proof that Pamela MacEachern was deliberately indifferent to Reaves.

## Conclusion

For the foregoing reasons, the Court should direct the verdict for the DOC defendants.Respectfully submitted,

Dated: September 26, 2018

NANCY ANKERS WHITE
Special Assistant Attorney General

  /s/Edward J. O'Donnell____
Edward J. O'Donnell, Counsel
BBO No. 561866
Legal Division
Bridgewater State Hospital
20 Administration Road
Bridgewater, MA 02324
(508) 279-4542
edward.odonnell@massmail.state.ma.us

## CERTIFICATE OF SERVICE

I hereby certify that on this date this document was given in-hand to plaintiff's counsel and I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated:   September 26, 2018                          ___/s/Edward J. O'Donnell_____
Edward J. O'Donnell, Counsel