UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TIMOTHY REAVES,<br>　　Plaintiff,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT<br>OF CORRECTION, et al.,<br>　　Defendants. | )<br>)<br>)<br>)<br>)   DOCKET NO: 15-40100<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MACEACHERN AND RODRIGUES'
SUPPLEMENTAL MOTION FOR DIRECTED VERDICT
AT THE CLOSE OF ALL EVIDENCE**

Defendants' Pamela MacEachern and Michael Rodrigues hereby move pursuant to Fed. R. Civ. P. Fed. R. Civ. P. 50(a), that this Court direct a verdict for them on plaintiff's claims. As reasons therefore, there is no legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff as follows:

   I.   **THE FEDERAL COURT DOES NOT HAVE JURISDICTION OVER THE STATE LAW CLAIM FOR VIOLATION OF THE MASSACHUSETTS DECLARATION OF RIGHTS, ARTICLE 114 BROUGHT PURSUANT TO G.L. C. 93, §103.**

The statute providing for civil actions for alleged violations of the Massachusetts Constitution, Declaration of Rights, Article 114 bestows jurisdiction exclusively on the Superior

Courts of the Commonwealth. G.L. c. 93, §103 states in pertinent part: "Said civil action shall be instituted in either in the superior court of the conduct complained of occurred, or in the superior court for the county in which the person whose conduct is complained of resides, or has his principal place of business.")

The defendants have not waived this issue. Subject matter jurisdiction is a non-waivable issue that cannot be conferred by consent, conduct or waiver. Totsi v. Akik, 386 Mass. 482 (1982), appeal after remand, 400 Mass. 224, cert. den. 108 S.Ct. 453, 484 U.S. 964, 98 L.Ed.2d 393. A court's lack of subject matter jurisdiction can be raised by either party at any point in the proceedings. Shea v. Neponset River Marine & Sportfishing, Inc., 14 Mass. App. Ct. 121, 129 (1982).

The Court may not proceed with the Article 114 claim. When one court has received exclusive original jurisdiction over an action, then no other court may exercise "any power or authority to hear" such action. Humphrey v. Berkshire Woollen Company, 92 Mass. 420, 421 (1865); Nolan, Massachusetts Practice Series: Civil Practice, Vol. 9, § 106, at p. 149 (1992) (2d ed.)(stating that if a court "has not been given original jurisdiction over a particular type of proceeding," then that court does not have the "power or authority to decide the case, and any decision rendered is void"); see U.S. v. Forma, 42 F.3d 759, 762 (2d Cir. 1994) (default

judgment cannot lie in the absence of subject matter jurisdiction).

The Court must dismiss the claim now before it goes to the jury. Where it is clear that a district court lacks jurisdiction over a controversy, that court has a duty to dismiss the action. Kennedy v. Consolidated Motor Lines, 312 Mass. 84, 89 (1942); see Alexander v. City of Boston, et al., 1993 Mass. App. Div. No. 174443 (where the Boston Municipal Court lacks jurisdiction over an action, there is no "statutory scheme permitting removal of such cases to the Superior Court."). There is no other state law permitting a claim for alleged violation of the Massachusetts Constitution. Cruz v. Collins, 46 N.E. 3d 114 (Unpublished) 2016 WL743809, n.10, citing Martino v. Hogan, 37 Mass.App.Ct. 710, 720 1990; FAR denied 419 Mass. 1106 (1995).

II. **IN THE EVENT THE COURT DOES NOT DISMISS THE ARTICLE 114 CLAIM, THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON THE MASSACHUSETTS DECLARATION OF RIGHTS, ARTICLE 114 CLAIM**

The law provides that defendants, as public officials, and in particular, as prison officials, are entitled to assert the defense of qualified immunity. Procunier v. Navarette, 434 U.S. 555 (1978); Bonitz v. Fair, 804 F.2d 164, 166 (1st. Cir. 1986); Foster v. McGrail, 844 F.Supp. 16, 23-24 (D. Mass. 1994). Under qualified immunity, public officials are protected from liability for liability arising out of the exercise of their

discretionary functions. <u>Bergeron v. Cabral</u>, 560 F.3d 1, 5 (1st Cir. 2009). The scope of qualified immunity "sweeps so broadly that 'all but the plainly competent or those who knowingly violate the law' are protected from civil rights suits for damages." <u>Hegarty v. Somerset County</u>, 53 F. 3d 1367, 1373 (1st Cir. 1995) (citation omitted). <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

Qualified immunity analysis requires an analysis of (1) whether the evidence introduced by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the alleged violation. <u>Moldonado v. Fontanes</u>, 568 F.3d 263, 269 (1st Cir. 2009). The "clearly established right" factor requires the court to decide (1) whether the contours of the right [were] so clearly established that a reasonable official would understand what he was doing violates the right; and (2) whether in the specific context of the case, "a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." <u>Maldonado</u>, 568 F.3d at 269. In this context, the court must consider what Deputy Superintendents MacEachern and Rodrigues actually knew and whether their actions in light of what they knew were deliberately indifferent to an actual AND a known foreseeable risk of serious harm to Reaves.

The evidence introduced at trial, including, but not limited to that listed here, established that MacEachern had allowed within a few days of their submission two accommodation requests that Reaves had submitted. A third accommodation request, relating to hearing aids, was more medical in nature than being an accommodation request and MacEachern was informed that the hearing aids had been provided to Reaves. Reaves had not filed any other written accommodation requests. Reaves had filed 18 grievances. None of which concerned him being taken outside, given a shower, or for socialization. Reaves had requested to be given law clerk training. But there was no such program being offered. He had not filed any other written requests for access to any other activities or programs.

The evidence established that while he was at SBCC, Reaves submitted four accommodation requests relating to a request to be taken outside, for access to a common dayroom for socializing, to be given a shower, and for program access. The other inmates housed within the infirmary were not given outdoor access, or common room access, or activities and programs. Rodrigues initially had the impression that there were medical contraindications preventing the movement of Reaves out of his bed. Later, he was informed otherwise and so assessed the requests. SBCC is a maximum security prison. The inmates housed there have been so classified based upon the perceived

need for high security. There were concerns with the prospect of intermingling Reaves with that population. SBCC operated in a highly regimented manner. The prison is locked down periodically during each day to allow for the passage of certain categories of inmates throughout. It was not deemed feasible to consider including another prison lockdown period to allow for the traversing of Reaves throughout the prison to bring him outside. Regarding his shower request, the showers were measured and because Reaves must remain lying down it was determined that the showers were too small to fit a gurney to bring in Reaves. Regarding programs, Reaves was tested and found to score too advanced to be eligible for academic programs. There were three vocational education programs offered: a barbershop, culinary arts, and computer training. Reaves was not capable of participating in either the barbershop or culinary arts program. SBCC did not have the resources to provide one-on-one computer training. Rodrigues authorized inmate writing assistants to frequently interact with Reaves. And a special visiting arrangement was made whereby Reaves' nephew, an inmate at SBCC, was allowed to visit with Reaves—something not done for the other inmates in the infirmary. On one occasion, it was suggested to Reaves that he be given a roommate, but he adamantly refused the suggestion.

Qualified immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only for transgressing bright lines." Wilson v. Layne, 141 F. 3d 111, 114 (4th Cir. 1998) Saucier v. Katz, 553 U.S. 194, 121 S.Ct. 2151, 2158 (2001), citing Priester v. Riviera Beach, 208 F.3d 919, 926-927 (11th Cir. 2000).  The defendants are immune from liability for violations of the plaintiff's civil rights if the defendants performed their official duties in the objective good faith belief that their actions were proper and lawful. Even if a defendant made a mistake in the circumstances, the defendant is entitled to the immunity defense as long as his mistaken understanding was reasonable.  Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001).

Here, MacEachern had not known of Reaves' desire to go outside, be given a shower, for other socializing opportunities or access to programs.  She is entitled to qualified immunity as a result.

Here Rodrigues was aware of Reaves' requests and considered each of them.  However, for the reasons cited, he was unable to provide several of the accommodations requested.  He is entitled to qualified immunity.

Officials sued for constitutional violations do not lose their qualified immunity merely because they may have violated some statute or regulation or policy. Davis v. Scherer, 468 U.S.

183 (1984); Martino v. Hogan, 37 Mass. App. Ct. 710 (1994)(prison officials). Even if the defendant violated a statute, or regulation, or policy, the Court must afford him qualified immunity unless it also finds that he acted in blatant reckless disregard of the plaintiff's clearly established constitutional rights under the Eighth Amendment, because violations of statutes, regulations, or policies are not violations of the Eighth Amendment or any other constitutional provision. Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 546 (1998). Martino v. Hogan, 37 Mass. App. Ct. 710 (1994)(no personal liability on Department of Correction employees, including superintendent and commissioner and damages cannot be awarded for failure to follow Department regulations and state statutes). In other words, a lawsuit for money damages cannot be based merely on the violation of a statute, or a regulation, or a policy. Loffredo, at 546.

## Conclusion

For the foregoing reasons, the Court should dismiss the Massachusetts Declaration of Rights, Article 114 claim.

Dated: September 28, 2018

Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

_/s/Edward J. O'Donnell____
Edward J. O'Donnell, Counsel
BBO No. 561866
Legal Division
Bridgewater State Hospital
20 Administration Road
Bridgewater, MA 02324
(508) 279-4542
edward.odonnell@massmail.state.ma.us

/s/Margaret S. Melville_
Margaret S. Melville
B.B.O. #477970
Senior Litigation Counsel
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA  02110
(617) 727-3300 x1149
Margaret.Melville@Massmail.state.ma.us

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated:   September 28, 2018

/s/Margaret S. Melville
Margaret S. Melville, Counsel