UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY M. REAVES,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF CORRECTION, CAROL HIGGINS O'BRIEN, MICHAEL RODRIGUES, PAMELA MACEACHERN, STEPHANIE COLLINS, MHM CORRECTIONAL SERVICES, INC., MASSACHUSETTS PARTNERSHIP FOR CORRECTIONAL HEALTHCARE, GERALDINE SOMERS, LEIGH PARISEAU, JULIE IRELAND, KHALID KHAN, AND BONNIE DAMIGELLA,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 4:15-40100-TSH |

## MEMORANDUM AND ORDER

**August 19, 2019**

**HILLMAN, D.J.**

Defendants' move to stay the execution of the Court's August 1, 2019 judgment pursuant to Fed. R. Civ. P. 62(c) pending the disposition of post-judgment motions. (Docket No. 317). The Supreme Court has concluded that the relevant factors when deciding to issue a stay pending appeal "are generally the same" for a district court and for a court of appeals. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). These factors are:

> (1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent the stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* I find that Defendants have not made a strong enough showing to succeed under the first factor. Even assuming they have, the remaining *Hilton* factors tip heavily against issuing a stay.

## 1. First Factor

"When the request for a stay is made to a district court, common sense dictates that the moving party need not persuade the court that it is likely to be reversed on appeal. Rather, with regard to the first prong of the *Hilton* test, the movant must only establish that the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear." *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998).

Defendants' argue that a three-judge panel must have approved the release of Mr. Reaves. They are incorrect. A three-judge panel is required for prisoner release orders. The PLRA defines a "prisoner release order" to "include[ ] any order, including a temporary restraining order or preliminary injunctive relief, that has the purpose or effect of reducing or limiting the prisoner population, or that directs the release from or nonadmission of prisoners to a prison."

In its order, this Court did not release Mr. Reaves from incarceration, it transferred him. This is a distinction not without a difference. *See Plata v. Brown*, 2013 WL 3200587, at *8 (N.D. Cal. 2013) (noting that "Defendants conceded that an order to transfer any single inmate out of a prison to correct the violation of a constitutional right caused by something other than crowding— for example, because transfer was necessary for the inmate to obtain appropriate medical care— would not be a 'prisoner release order'").

Further, assuming the Court's order qualifies as a release, at least one court has questioned whether the PLRA's three-judge requirement applies for the release or transfer of a single prisoner. *See Gillette v. Prosper*, No. CA 2014-00110, 2016 WL 912195, at *3 n.4 (D.V.I. Mar. 4, 2016) (assuming without deciding "that Plaintiff's request for a transfer or release of a single prisoner

2

falls within the statutory definition of a 'prisoner release order'"). *Cf. Brown v. Plata*, 563 U.S. 493, 499 (2011).

Moreover, even if the transfer of a single prisoner qualified as a release, the Court would still refrain concluding that a three-judge panel would be required. Courts do not construe statutory phrases in isolation; they read them as a whole. *United States v. Morton*, 467 U.S. 822, 828 (1984). Further, "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States*, 529 U.S. 848, 857 (2000) (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)). Similarly, "a statute should not be construed to displace courts' traditional equitable powers '[a]bsent the clearest command to the contrary.'" *Gilmore v. People of the State of California*, 220 F.3d 987, 997 n.12 (9th Cir. 2000) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979)); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("Unless a statue in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.").

Reading the statue as a whole entails harmonizing the definition of "prisoner release order" with the requirements for entering one. *Plata*, 2013 WL 3200587, at *9. One of two necessary conditions for entering a release order, as Defendants noted, is that the three-judge panel find by clear and convincing evidence, that "crowding is the primary cause of the violation of a Federal right." 18 U.S.C. § 3626 (a)(3)(E)(i).[1] Accepting Defendants argument would mean that the only way a district court can order the release of a prisoner is for a violation of his constitutional rights

---

[1] The three-judge court must also find that "no other relief will remedy the violation of the Federal right." 18 U.S.C. § 3626 (a)(3)(E)(ii).

where overcrowding caused the violation, but not if any other reason caused the violation. *Plata*, 2013 WL 3200587, at *9.

Defendants have failed to present anything in the legislative history which evidences Congressional intent to limit the protection of inmates' constitutional rights in this way—presumably because there is no such history.[2] *Id.* In fact, the legislative history suggests that the sponsors of the PLRA were primarily "concerned with courts setting 'population caps' and ordering the release of inmates as a sanction for prison administers' failure to comply with the terms of consent decrees designed to eliminate overcrowding."[3] *Gilmore*, 220 F.3d at 998 n.12.

Of course, "Congress is free to alter the standard that determines the scope of prospective relief for unconstitutional prison conditions." *Id.* at 1002. That freedom, however, is not without limits. That is, Congress may alter the standard "so long as the restricts on the remedy do not prevent vindication of the right." *Id.* at 1002-1003. As the court in *Plata* noted,

> It is easy to imagine circumstances—not caused by crowding—where a transfer would be necessary to protect inmates' constitutional rights: for example, *if specialized medical care were not available at a particular prison*, or if one or more inmates were illegally transferred in retaliation for exercising their First Amendment rights. More starkly, imagine that a prison were so dilapidated that no

---

[2] More generally, Defendants have also failed to present any legislative history indicative of any concern with inmate transfers as opposed to releases. *Plata*, 2013 WL 3200587, at *9.

[3] For instance, Senator Dole remarks:
> The second major section of the [PLRA] establishes some tough new guidelines for Federal courts when evaluating legal challenges to prison conditions. These guidelines will work to restrain liberal Federal judges who see violations o[f] constitutional rights in every prisoner complaint and who have used these complaints to micromanage State and local prison systems.
> Perhaps the most pernicious form of micromanagement is the so-called prison population cap. In 1993, for example, the State of Florida put 20,000 prisoners on early release because of a prison cap order issued by a Federal judge who thought the Florida system was overcrowded and thereby inflicted cruel and unusual punishment on the State's prisoners. And then there's the case of Philadelphia, where a court-ordered prison cap has put thousands of violent criminals back on the city's streets, often with disastrous consequences. . . .
> By establishing tough new conditions that a Federal court must meet before issuing a prison cap order, this bill will slam-shut the revolving prison door.

141 Cong. Rec. S14414 (daily ed. Sept. 27, 1995) (remarks of Sen. Dole).

4

one could predict when the wall would crumble down, thus putting inmates' lives at serious risk, but that Defendants refused to transfer those inmates despite being aware of that risk, in clear violation of the Eighth Amendment. In all of these cases, crowding would not be the cause (let alone the primary cause) of the constitutional violation, and adopting Defendants' interpretation of 'prisoner release order' would thus prevent any court—single judge or three judge—from entering a transfer order.

*Plata*, 2013 WL 3200587, at *9.

Defendants further contend that this Court was required to make findings under 18 U.S.C. § 3626. As noted above, while the Court doubts that the requirements of the PLRA apply here, even if they did, the Court need not make explicit findings. *See Gilmore v. People of the State of California*, 220 F.3d 987, 1007 n.25 (9th Cir. 2000) ("We do not read [§ 3626(b)(2)] to mean that explicit findings must have been made, so long as the record, the court's decision ordering prospective relief, and relevant caselaw fairly disclose that the relief actual meets the [§ 3626(b)(2) narrow tailoring standard.").[4] Insofar as it is not plain from the Court's order, if Mr. Reaves is not transferred, he will die. Thus, it follows, and the Court now finds, that the relief ordered is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Defendants similarly argue that this Court did not consider any adverse impact on public safety or the operation of the criminal justice system. Insofar as these findings are required here, which again, the Court questions, it will make them explicit. Mr. Reaves is a quadriplegic. Presumably, the public will not be in danger with a quadriplegic free from prison. Second, the Court believes that transferring Mr. Reaves would assist the operation of the criminal justice

---

[4] Pursuant to section 3626(b)(2), "a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626 (b)(2).

5

system.  The DOC has demonstrated both inability and unwillingness to treat him.  If anything, the DOC will operate more smoothly without Mr. Reaves in its custody.

*2. Remaining Factors*

The remaining *Hilton* factors weigh heavily in favor or denying a stay.  Defendants do not demonstrate that they will be irreparably injured absent a stay.  They do point out that "if a proper non-DOC facility that will accept the plaintiff . . . security measures need to be addressed, as there are registered victims under G.L. c. 258B who will be impacted his [sic] release from DOC custody." (Docket No. 317, at 4).  That statute, among other things, provides victims with the right "to be informed in advance by the appropriate custodial authority whenever the defendant receives a temporary, provisional or final release from custody, whenever a defendant is moved from a secure facility to a less-secure facility, and whenever the defendant escapes from custody." Mass. Gen. Laws. ch. 258(B) § 3(t).  The Court has confidence in the DOC and trusts that it will comply with the requirements of the statute.  Defendants further contend that Mr. Reaves will not be harmed by a stay because he has been temporarily transferred to Lemuel Shattuck Hospital for assessment.  There is no indication how long Mr. Reaves will be there.  Further, if the Court grants a stay, Defendants will be free to return Mr. Reaves to his cell, with his inadequate bedding, improper diet, and ineffective care.  Finally, it is certainly in the public interest to protect prisoners' constitutional rights.

Accordingly, for the reasons stated above, Defendants' motion is ***denied***.

**SO ORDERED.**

    */s/ Timothy S. Hillman*
    **TIMOTHY S. HILLMAN**
    **DISTRICT JUDGE**