AFFIDAVIT OF LAUREN PETIT, ESQ.

I, Lauren Petit, Esq., do hereby depose and say:

1.  I am co-counsel for Plaintiff Timothy Reaves in the litigation *Reaves v. Dep't of Correction, et al.*, C.A. no. 15-40100.

2.  I also represent Mr. Reaves on a petition for medical parole that I filed with the Department of Correction on June 28, 2018.

3.  Under the medical parole statute, G.L. c. 127, § 119A, a medical parole plan is required for each petitioning prisoner, including cementing arrangements for where he will live, who will provide care and how it will be paid for. [1]

4.  In an effort to facilitate Mr. Reaves' release on medical parole, I began trying to find placement for Mr. Reaves in an appropriate facility before the June 2018 filing of his petition.

5.  Early in that process, Spaulding Rehabilitation Hospital advised that Mr. Reaves does not qualify for admission to the acute rehabilitation unit there because his current physical condition with fixed contractures means that there are no rehabilitation goals to be met. The presence of identifiable rehabilitation goals, and the ability to work toward them in physical therapy for at least three hours a day are requirements for admission to an acute rehabilitation level facility.

6.  In May 2018, I began seeking admission for Mr. Reaves at a Department of Public Health (DPH) hospital in Massachusetts.  The DPH has three hospitals, Tewksbury Hospital,

---

[1] The question of who is responsible for creating the medical parole plan is a matter of contention that is being considered by the Massachusetts Supreme Judicial Court presently. *Buckman, Cruz v. DOC et al.*, No. SJC-12725. The DOC contends that it is not responsible for creating such plans and it has consequently been unwilling to participate in attempts to find placement for Mr. Reaves; at least until this Court's final judgment was entered.

Lemuel Shattuck Hospital and Western Massachusetts Hospital, but they have no nursing level facilities.  Over a period of many months I remained in regular contact with the Medical Director at Tewksbury Hospital, Dr. James DeVita, and the DPH Associate Commissioner of Hospitals, Frank Doyle. I provided records for their review and discussed Mr. Reaves' needs and challenges.  I arranged for Dr. DeVita to do an on-site evaluation of Mr. Reaves for pre-admission screening. The evaluation included speaking with Mr. Reaves, with Dr. Angeles and with other nursing staff.

7. After the pre-admission screening, Dr. DeVita's December 28, 2018 report found that Mr. Reaves did not qualify for admission to any DPH hospital because he needs nursing care, not hospital level care.  Dr. DeVita noted that he relied on reports from Dr. Angeles and other staff that Mr. Reaves consistently refuses medical care, including physical and occupational therapy, over Mr. Reaves' claims that he is not offered such care.

8. I sought admission for Mr. Reaves at many skilled nursing long term care facilities including Hebrew Senior Life in Roslindale; Life Care Center of South Shore in Scituate; Lutheran Health in Worcester; Catholic Memorial in Fall River; Alliance Braintree in Braintree; Quabbin Valley Healthcare in Athol; Farren Care Center in Montague and Southeast Rehab in Easton.  None of them was able to accept Mr. Reaves.

9. Since August 2, I have requested that Defendants work cooperatively with me to seek placement for Mr. Reaves outside the DOC to comply with the Court's Order. Defendants have not been receptive to that request.

10. In May 2019, I reached out to a state run nursing facility in Connecticut called 60 West to pursue placement for Mr. Reaves.  I sent them the medical and correctional information they requested and explained the challenges that caring for Mr. Reaves presents.  They

are aware of his medical condition, including Traumatic Brain Injury, his criminal record,
and his disciplinary history; including the accusations of spitting at caregivers at MCI
Shirley.

11. This facility has a unit that provides skilled nursing care and services for physically,
mentally and cognitively impaired individuals who are difficult to place in a standard
nursing home or long-term care setting; it is contracted to receive patients referred from
the Connecticut DOC and Department of Mental Health and Addictions. *See*
https://www.60-west.com/securecare-options/. They also have a unit that is focused on
care for patients with acquired brain injury, with specialists in care for persons with TBI.
Throughout the facility they have wound care specialists, behavioral specialists and
physical and occupational therapists.

12. Unfortunately, 60 West does not have a spinal cord injury specialist on staff, however
there are three rehabilitation centers nearby them that do provide specialty care to spinal
cord injury patients. Gaylord Rehabilitation Hospital is approximately a half hour from
60 West. Dr. Leslie Morse is very familiar with Gaylord and worked very closely with
one of the physiatrists there while she was at Spaulding. She offered to contact that
doctor to pave the way for Mr. Reaves becoming a patient at that rehabilitation center
should he be medically paroled to 60 West.

13. On August 6, the administrator at 60 West contacted me to request that I provide a draft
payment contract to account for how they would be paid until Mr. Reaves acquired
Connecticut residency entitling him to coverage under Connecticut's public health
insurance. I sought that information from Defendants immediately, informing them that

the information was necessary to 60 West's consideration of Mr. Reaves.  To date, Defendants have not provided that information to me or to 60 West.

14. Despite my inability to provide them the information they requested, 60 West has continued to show interest in Mr. Reaves as a potential patient. On September 23, their administrator contacted me to request that arrangements be made for them and me to meet with Mr. Reaves, review medical records and speak with staff about him.  On September 25, the Superintendent at Shattuck approved my request for that meeting. Three staff members from 60 West and myself will be doing an "on site" visit with Mr. Reaves and with staff at Shattuck on Friday, October 4, for 60 West to assess whether he is a good fit for their facility.

15. DOC administrators have informed Plaintiff that they have sought placement for Mr. Reaves at numerous facilities, with no luck.  I have requested, but not been provided, information about where they have tried and what information or presentation about Mr. Reaves they are giving in their placement pitch.

16. It is my belief that 60 West is likely the best option for long term care for Mr. Reaves at this point.  If, after receiving a tendon release evaluation, Dr. Cho recommends the surgery and it is provided, that could change his eligibility for some currently out of reach options.  Recovery from the surgery would likely qualify Mr. Reaves for hospital level care and, once recovered, our hope is that sufficient flexibility in his joints would be regained that identifiable rehabilitation goals could qualify him for acute rehabilitation.[2]

---

[2] It should be noted that none of these anticipated outcomes would result in Mr. Reaves gaining muscle strength or the ability to independently move his legs; only that he could be moved into a sitting position, thereby increasing his mobility and ability to increase body movement during therapy.

It will be critical for Defendants to cooperate in the attempt to get Mr. Reaves accepted at 60 West.

17. Because compliance with the Court's final judgment has not yet been achieved, it appears that further direction from this Court is needed to move toward that final goal.

Signed under the pains and penalties of perjury,

_____*/s/ Lauren Petit*_____

Lauren Petit

Dated: September 30, 2019