```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


 Timothy M. Reaves,            )
           Plaintiff,          )
                               )
 vs.                           )    Case No. 15cv40100-TSH
                               )
                               )
 Department of Correction,     )
 et al.,                       )
           Defendants.         )


 BEFORE:  The Honorable Timothy S. Hillman


                    Telephonic Status Conference



                                    United States District Court
                                    Courtroom No. 2
                                    595 Main Street
                                    Worcester, Massachusetts
                                    January 15, 2020




                    Marianne Kusa-Ryll, RDR, CRR
                       Official Court Reporter
                     United States District Court
                      595 Main Street, Room 514A
                       Worcester, MA 01608-2093
                   508-929-3399 justicehill@aol.com
                 Mechanical Steno - Transcript by Computer
```

```
 1   APPEARANCES:

 2   Prisoners' Legal Services
     Lauren Petit, Esquire
 3   50 Federal Street, 4th Floor
     Boston, Massachusetts 02110
 4   on behalf of the Plaintiff

 5   Department of Corrections
     Edward J. O'Donnell, Esquire
 6   Bridgewater State Hospital
     20 Administration Road
 7   Bridgewater, Massachusetts 02324
     on behalf of the Defendants Department of Correction,
 8   Carol Higgins O'Brien, Michael Rodrigues, Pamela MacEachern,
     and Stephanie Collins
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      P R O C E E D I N G S
 2              (The following proceedings were held in open court
 3    before the Honorable Timothy S. Hillman, United States District
 4    Judge, United States District Court, District of Massachusetts,
 5    at the Donohue Federal Building & United States Courthouse,
 6    595 Main Street, Worcester, Massachusetts, on January 15,
 7    2020.)
 8              THE CLERK:  All rise.
 9              Court is now open.  You may be seated.
10              Case No. 15-40100, Reaves versus the Department of
11    Correction.
12              Counsel, please note your appearance for the record.
13              MS. PETIT:  Lauren Petit for the Plaintiff Timothy
14    Reaves.
15              THE COURT:  Good afternoon, Ms. Petit.
16              MS. PETIT:  Good afternoon.
17              MR. O'DONNELL:  Good afternoon, your Honor.  Ted
18    O'Donnell for the Department of Correction.
19              THE COURT:  Good afternoon, Mr. O'Donnell.
20              Somebody tell me something good.
21              (Laughter.)
22              MS. PETIT:  Okay.  I think -- I think today we
23    actually have something good.
24              At the beginning of this week I received the
25    information that Mr. Reaves has been clinically accepted at the
```

1  iCare Health Network in Connecticut.
2           THE COURT:  Spell the iCare.
3           MS. PETIT:  ICare, kind of like iPhone with a small i,
4  and then capital C, care, C-A-R-E.
5           THE COURT:  I see.
6           MS. PETIT:  They are a company that runs a network of
7  approximately 10 nursing facilities in the State of
8  Connecticut.  It's -- that is the parent company of the 60 West
9  facility, which we had talked about before.
10          They determined that after review of records and
11 evaluating Mr. Reaves in person and talking to care providers
12 that they can care for him in a number of their facilities
13 there.
14          And the only reason that it's a clinical acceptance
15 instead of a straight-out acceptance is because there are a
16 number of -- of sort of smaller items to be dealt with before
17 it's a final permanent succession.  So --
18          THE COURT:  Great.  What's the timing?
19          MS. PETIT:  The timing depends on which facility he
20 would be going into.  Unfortunately, 60 West has an extremely
21 long wait list, so it would likely be one of three other
22 facilities that they recommended as being particularly able to
23 provide appropriate care to Mr. Reaves.  Two of them are in
24 Manchester, Connecticut; one of them is in East Windsor,
25 Connecticut.

1    Each of their facilities has 24-hour nursing care.
2  They have physical therapy, occupational therapy, wound care,
3  nutrition, rehabilitation programs.  None of them has a spinal
4  cord injury specialist on staff so the network does have a
5  consultant podiatrist, who rotates throughout the facilities.
6    That physiatrist used to work at Seaward Specialty
7  Health, which is in the same area as these facilities and where
8  the plan would be to try to get Mr. Reaves accepted as a
9  patient so that he would have, you know, spinal cord injury
10 specialty care that could work in concert with the nursing
11 facility.
12   THE COURT:  Great.
13   MS. PETIT:  So that's --
14   THE COURT:  What's the -- what's the -- how is
15 the -- what's the -- what's the payment situation?
16   MS. PETIT:  Okay.  So the payment situation is this.
17 Mr. Reaves could get -- apparently, the East Windsor facility,
18 which is called Fresh River has a doctor -- their medical
19 director there has a Massachusetts license and, therefore, a
20 MassHealth provider number.  So they're of the understanding
21 that Mr. Reaves could go there and have MassHealth pay under
22 that Massachusetts provider number until he is on the
23 Connecticut version of Medicaid, and then he would transfer
24 over to that.
25   What the -- what iCare is requiring is that there be

1  some sort of contract ensuring that they would be paid what
2  would be the Connecticut rate for whatever expenses there are
3  during that time period, you know, from when he got there until
4  he's actually on the Connecticut Medicaid.
5       I'm not -- I'm not sure how the Massachusetts rate
6  compares to the Connecticut rate, but if there's a difference
7  they would need to be reimbursed that difference.
8       And if for some reason he can't be on the
9  Mass -- MassHealth during that period then they would need to
10 be reimbursed the whole amount.
11      So our position is that that -- that contract would
12 need to be with the Department of Correction, but with the hope
13 that if he goes to Fresh River that really no payment would
14 actually end up being required or if any, very little.
15      THE COURT:  Thank you.
16      Mr. O'Donnell, are you aware -- were you -- are you in
17 the loop on this?
18      MR. O'DONNELL:  Yes.  Just real recently, yesterday,
19 Attorney Petit had given me, you know, what I'm going to
20 determine as good news, this good news.  And what I asked her
21 to do, and I'm sure she will, is file a written request with
22 the commissioner to lift the stay that had been placed on the
23 medical parole petition due to the lack of available location
24 given this new information.  And I asked Attorney Petit, you
25 know, give all these details, including the questions relating

1   to finances so that it can be raised up the chain, you know, to
2   the commissioner ultimately because the medical parole petition
3   was never fully acted on.  It was pending and stayed as a
4   result of an inability to locate a location that would be
5   suitable for -- for Mr. Reaves's placement.  So kind of as a
6   parallel track to the court, you know, order from the
7   litigation.
8           This was a separate entirely different matter, but at
9   any rate, so I'm sure Attorney Petit will get that.  I asked
10  her to get it to me.  I happened to had been involved in the
11  medical parole petition.  There's usually some legal counsel
12  assigned to kind of steer things and get it up to the
13  commissioner, and I told her I would do that.  So the, you
14  know, details of the clinical acceptance, which sounds very
15  positive, whatever other information they're looking for, so I
16  can give that to the commissioner for her consideration.
17          THE COURT:  Ms. Petit, how soon before you can get
18  that to Mr. O'Donnell?
19          MS. PETIT:  I should be able to get that to him either
20  by the end of the day today or tomorrow in the morning.
21          THE COURT:  Beautiful.  That's great.
22          Mr. O'Donnell, what's your -- what's the time frame
23  that you're working under?
24          MR. O'DONNELL:  Well, as soon as I get this
25  information from Attorney Petit, I'm going to, you know, funnel

it up to the chain of command with a, you know, an urgency to it given the fact of our litigation, if nothing else, and, you know, it's -- it is somewhat complicated, you know, given the different states.

Like a medical parole to Massachusetts involves Massachusetts parole going to assess the place and determining the appropriateness of it and the things like that. I'm not sure what kind of a time lag would be built in with an out-of-state kind of process. I mean there would have to be an assessment of this place to determine the appropriateness of it. It sounds appropriate. I don't have concerns from what Attorney Petit is saying. It sounds, you know, fine, but I'm not the one that -- that decides that.

So at any rate it's -- it's a little bit hard to give you a firm date just because of the couple of questions that are -- that are presented. If it were more straightforward, I could give you a better estimate as to, you know, turnaround time. It's hard to give you a guesstimate with the number of complicating factors in this case.

THE COURT: So --

MR. O'DONNELL: I will say, so it will be, you know, acted on expeditiously. There's no question there won't be foot dragging.

THE COURT: So, Ms. Petit, what -- what happens if -- what's -- what's the plaintiff's plan if the bed becomes

1    available and we're still wrestling with MassHealth?
2                MS. PETIT:  If we're wrestling with MassHealth in
3    terms of paying for that -- that period until he's on
4    Connecticut?
5                THE COURT:  Yeah.
6                MS. PETIT:  I'm not actually anticipating much
7    wrestling with them.  They -- the iCare folks seem quite
8    confident that they could bill MassHealth under that doctor.
9                THE COURT:  All right.
10               MS. PETIT:  But that's it.
11               THE COURT:  All right.  I'm not going to create a
12   problem.  I'm not going to create a problem where none exists.
13               Why don't we go out -- what's your expectation when a
14   bed would be available then?  I don't think I did get a direct
15   answer on that.
16               MS. PETIT:  It -- it depends on which facility, but
17   they said with the three facilities that they recommended in
18   particular, which includes the Fresh River facility where the
19   MassHealth provider number is, they could have a bed within
20   days.
21               THE COURT:  Okay.
22               MS. PETIT:  But I agree with Attorney O'Donnell that
23   there are a number of other complicating factors.  I do -- I am
24   encouraged by the fact that there are people who are on
25   Connecticut parole in a number of iCare Health Network

1  facilities, so they have certainly been approved for folks on
2  parole previously, and I think the question will be just, you
3  know, Mr. Reaves specific.  I'm hopeful that that will -- I
4  don't know what the timing will be like, but I'm hopeful that
5  the ultimate result will be good.
6  		THE COURT:  Why don't we do this.  Let's go out -- I
7  can go -- I can go longer, but I really want to keep the
8  thread.  How about if we go out about three weeks?
9  		And if you guys -- and if you guys hear anything
10 sooner, just get ahold of Mr. Castles, and we'll tee it up even
11 quicker.
12 		MS. PETIT:  Okay.  So that would be around the 5th of
13 February?
14 		THE COURT:  I don't know.  Let me talk to the boss
15 here.
16 		(Laughter.)
17 		(The clerk conferred with the Court.)
18 		THE COURT:  How's two o'clock on February 5th?
19 		MS. PETIT:  That works fine.
20 		MR. O'DONNELL:  Yeah, that's fine.
21 		THE COURT:  Great.  And as always, you're invited in
22 person, but we can do it telephonically.
23 		MR. O'DONNELL:  Telephone would be preferred for me,
24 your Honor.  I have cases that day at Bridgewater so it would
25 be preferable for phone for me on the 5th.

```
1              THE COURT:  Yeah, of course, as always.
2              All right.  Great.  Great work, you guys.  Keep me
3   posted.
4              MR. O'DONNELL:  Thank you.
5              MS. PETIT:  Thank you very much.
6              THE COURT:  You're welcome.
7              MR. O'DONNELL:  Bye-bye.
8              (At 2:15 p.m., Court was adjourned.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

I, Marianne Kusa-Ryll, RDR, CRR, do hereby certify that the foregoing transcript is a true and accurate transcription of my stenographic notes before the Honorable Timothy S. Hillman, to the best of my skill, knowledge, and ability.

/s/ Marianne Kusa-Ryll                               2/13/2020
Marianne Kusa-Ryll, RDR, CRR                         Date
Official Court Reporter