UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY REAVES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DEPARTMENT OF CORRECTION, ET AL.,[1] )<br>)<br>Defendants. ) | CIVIL ACTION<br>NO. 15-40100 |

**PLAINTIFF'S MOTION TO SHOW CAUSE WHY DEFENDANT STEPHANIE COLLINS AND COMMISSIONER CAROL MICI SHOULD NOT BE FOUND IN CONTEMPT OF THIS COURT'S ORDER OF FINAL JUDGMENT**

Plaintiff Timothy Reaves, pursuant to 18 U.S.C. § 401 and Fed.R.Civ.P. 70(e) brings this motion seeking enforcement of this Court's July 31, 2019 Order, (Doc. 315), entered on August 1, 2019, (Doc. 316), that Defendants immediately transfer Mr. Reaves "to a non-DOC facility that treats spinal cord injuries and has a spinal cord injury specialist on staff with the appropriate training to care for his medical needs." (Doc. 315 at 19). Several days after the Court's Order, Defendants moved Mr. Reaves to the correctional wing of Lemuel Shattuck Hospital, where he remains today. It is undisputed that this transfer does not comply with the Court's Order because Shattuck Hospital is a Department of Correction (DOC) facility and it does not have a spinal cord injury specialist or providers with the appropriate training to care for Mr. Reaves' medical needs on staff.

"To prove civil contempt, a movant must show that (1) the alleged contemnor had notice of the order, (2) 'the order was clear and unambiguous,' (3) the alleged contemnor 'had the ability to comply with the order,' and (4) the alleged contemnor violated the

---

[1] Stephanie Collins and Sheila Kelly.

order. *United States v. Saccoccia,* 433 F.3d 19, 27 (1st Cir.2005) (internal quotation marks omitted)." *Hawkins v. Dep't of Health & Human Servs. for New Hampshire, Com'r*, 665 F.3d 25, 31 (1st Cir. 2012). The movant must make this demonstration by clear and convincing evidence. *Id*.; citing, *Islamic Inv. Co. of the Gulf (Bah.) Ltd.,* 545 F.3d at 25; *Saccoccia,* 433 F.3d at 27.

1. **DEFENDANT STEPHANIE COLLINS AND DEPARTMENT OF CORRECTION HAD NOTICE OF THE ORDER TO TRANSFER MR. REAVES.**

It is undisputed that both Associate Deputy Commissioner for Clinical Services Stephanie Collins (ADC Collins) and DOC Commissioner Carol Mici were aware of this Court's Order and final judgment in this case. They, through counsel, have moved to stay the Order, (Doc. 317); twice moved for relief from or amendment to the Order, (Docs 326 and 343); and have filed an appeal of the Order to the First Circuit. *Reaves v. DOC et al*., No. 19-2089.

2. **THE COURT'S ORDER TO TRANSFER WAS CLEAR AND UNABMIGUOUS.**

The requirements of the Court's Order were abundantly clear: to transfer Mr. Reaves to a qualifying non-DOC medical facility. (Doc. 315, at 19). The Court, in its *Memorandum and Order* denying Defendants' motion for a stay, further clarified the meaning and immediacy of this order. (Doc. 321, at 5-6).

3. **DEFENDANTS STEPHANIE COLLINS AND CAROL MICI HAD THE ABILITY TO COMPLY WITH THE COURT'S ORDER.**

As described in Plaintiff's memorandum on remedies, (Doc 313), Defendants have at least two ways available to them to comply with the Court's Order for transfer;

they can medically parole Mr. Reaves to a qualifying placement, or they can transfer him to a qualifying medical facility while he continues to serve his sentence.

### a. Defendants Could Comply By Granting Mr. Reaves Medical Parole To The Facility In Connecticut That Has Already Accepted Him.

The medical parole statute permits Commissioner Mici to grant medical parole to Mr. Reaves as a prisoner who is permanently physically incapacitated. See G.L. c. 127, §119A. Such a grant could allow Mr. Reaves to be placed at an appropriate nursing facility. Since Mr. Reaves' medical parole petition was filed on June 28, 2018, Defendants have not met their obligation to create a workable parole plan, *see Buckman v. Commissioner*, 484 Mass. 14, 32 (2020), however Mr. Reaves has created a viable plan that Defendants are currently obstructing.

Mr. Reaves' parole plan is to go to Fresh River Healthcare, an iCare nursing facility in Connecticut, paid for by Medicaid. The facility clinically accepted Mr. Reaves for placement there after its staff reviewed Mr. Reaves's records, met with him and Shattuck staff caring for him, and determined that they can provide appropriate care for him if he is paroled. *See* Ex. 1, Landi email; Ex. 2, Petit Aff., ¶¶ 5, 7. The facility offers 24-hour nursing, nutrition care, physical, occupational and recreational therapy, wound care and psychiatry. Ex. 2, at ¶ 8. There is a physiatrist on staff, Board certified in physical medicine and rehabilitation, though he does not specialize in spinal cord injury care. *Id.*, at ¶ 9. In order to meet Mr. Reaves' specialized needs and the spirit of the Court's Order, it is anticipated that Mr. Reaves will be accepted as an outpatient for spinal cord injury specialty care at Gaylord Specialty Care, a hospital nearby that specializes in spinal cord injury care. The nursing facility is willing to work with

Gaylord to ensure that facility staff is trained to provide appropriate care for Mr. Reaves' needs.[2]  Id., at ¶¶ 10, 11. Mr. Reaves has agreed to this parole plan.[3]  Id., at ¶ 12.

The steps required to determine if this parole plan can be implemented are as follows: 1. The Commissioner must grant medical parole; 2. Massachusetts must transfer the parole to Connecticut parole for supervision; 3. Mr. Reaves must place the money paid to him in settlement of the medical claims in this case into a special needs trust fund; 4. Mr. Reaves must apply for Medicaid in Connecticut.

Significantly, Defendants do not object to the plan to place Mr. Reaves in the iCare facility in Connecticut.  But the Commissioner has taken the position that she can not grant medical parole until after all the other steps have taken place.  Her position has no merit.

> 1. *The Commissioner must grant a medical parole, conditional on the Connecticut Parole Board accepting Mr. Reaves' for supervision.*

Under the law, the Commissioner is required to grant a medical parole if she determines that Mr. Reaves is "permanently incapacitated such that if he is released he will live and remain at liberty without violating the law" and that the "release will not be incompatible with the welfare of society." *See G.L. 127, § 119A*; *Buckman*, 484 Mass. at 19. The Commissioner's decision on Mr. Reaves' petition was due by January 25, 2020, over a month ago. Ex. 2, ¶ 4.  The grant of parole is required to occur <u>before</u> the parole board imposes terms and conditions for the medical parole. *Buckman,* at 19.  Indeed,

---

[2] As previously discussed, Plaintiff anticipates an agreed-to motion to amend the Order to encompass this arrangement.

[3] Mr. Reaves had raised several concerns about the transfer out of state and was unsure at first if this plan was a good one.  In an attempt to assist him in making a decision, counsel arranged for Shattuck psychologist Robert McMackin to meet with Mr. Reaves regularly.  Dr. McMackin has a decades long beneficial treatment relationship with Mr. Reaves.  Notably, Mr. Reaves has sought to confer with family by telephone about his concerns regarding the move, but he is still unable to effectively do so over the telephone because Defendants have not provided a Cap-tel phone. Ex. 2, ¶ 12.

DOC's own policy specifically provides for the Commissioner making a conditional grant in this very circumstance, stating,

> "If the medical parole plan proposes a placement outside of the Commonwealth for the inmate, such placement will be subject to the guidelines of the Interstate Compact for Adult Offender Supervision, and approval of the petition may be conditioned on acceptance by the other jurisdiction, potentially delaying the inmate's release on medical parole." 103 DOC 603.02(D).

The grant of parole is the first step to implementing the parole plan, or to determining that it cannot be implemented. Therefore, by failing to grant a conditional medical parole[4] to Mr. Reaves despite his clear eligibility and a viable plan for his placement, the Commissioner and DOC are actively preventing this option from occurring.

2. *The conditional grant of parole must be sent to the Connecticut Parole Board to seek approval for a transfer of supervision.*

Once Commissioner Mici grants parole, the DOC must follow the procedures in the Interstate Compact for Adult Offender Supervision to transfer the parole supervision to Connecticut. Connecticut may reject transfer, requiring a new plan to be created.[5]

3. *If accepted by the Connecticut Parole Board, Mr. Reaves must place the settlement money into a special needs trust in Connecticut.*

The money received by Mr. Reaves as settlement for the claims against the DOC's former medical provider would render him ineligible for public health insurance in Massachusetts or Connecticut because his assets would be above the allowed dollar amount. Placement of those funds in a special needs trust is a permissible way to protect an otherwise eligible person's assets while still maintaining eligibility for public health

---

[4] Commissioner Mici has made at least two conditional grants of medical parole. Ex. 2, at ¶ 4.
[5] If Connecticut will not accept a transfer of parole supervision for Mr. Reaves, compliance with the Order is still possible. The Department of Public Health is required to receive patients who, at the expiration of their sentence, are too infirm to be released and for whom no other health care facility is available. See G.L. c. 127, § 151.

insurance.  Mr. Reaves has agreed to place his funds in a special needs trust.  Ex. 2, ¶ 14.  One aspect of such a fund is that it must be a "payback" trust, meaning that once it is created, upon Mr. Reaves' death the money must go to payback public benefits rather than pass through any will Mr. Reaves may leave.  The trust should also be created in the state where the trustee will live.  Ex. 2, ¶ 15.  Therefore, it does not make sense to take this step until Mr. Reaves' parole plan is finalized.

    4. *Mr. Reaves must apply for Medicaid in Connecticut.*

Defendants have determined that Mr. Reaves may not apply for Medicaid in Connecticut until he is a resident of that state.  He has agreed to apply for Medicaid to cover the cost of his care, and has already completed the application to the extent possible while he is in Massachusetts.  Ex. 2, ¶ 16.  Since Mr. Reaves' care at Shattuck is now being paid for by Medicaid, *see id.*, qualification for Connecticut Medicaid should not be problematic.

    b. **Defendants Could Comply By Transferring Mr. Reaves To A Hospital While In Custody.**

Under G.L. c. 127, §§ 117 and 119 the Commissioner is permitted transfer Mr. Reaves to an appropriate non-DOC hospital to receive appropriate care unavailable at the prison, including hospitals in other states.  This is the mechanism DOC has used to transfer Mr. Reaves to Shattuck Hospital where he is now.  While at the hospital, Mr. Reaves would continue to serve his sentence and be in the custody of the DOC.  G.L. c. 127, §§ 117, 119.

    4. **DEFENDANTS STEPHANIE COLLINS AND COMMISSIONER CAROL MICI VIOLATED THE COURT'S ORDER.**

More than six months after this Court ordered Defendants to immediately transfer Mr. Reaves, Defendants have not complied.  By refusing to grant medical parole conditional upon Connecticut accepting the transfer of supervision, a simple step that is a clearly established part of the medical parole process, Defendants are ensuring that the plan provided by Mr. Reaves cannot happen.  Defendants' own meager efforts at finding a placement for Mr. Reaves,[6] by delegating the responsibility to an employee of the medical contractor, are insufficient to be considered a good faith effort to substantially comply with the Court's Order.

## CONCLUSION

Defendants have failed to comply with, or take meaningful steps to comply with, this Court's Order, even after this Court found that Defendants are placing Mr. Reaves' life at risk by their violations of his rights.  An evidentiary hearing is necessary to assist this Court in determining what is needed to ensure the long overdue protection of Mr. Reaves' rights and health.

Respectfully submitted,

Plaintiff Timothy Reaves,
By his attorneys,

  /s/ Lauren Petit
Lauren Petit, BBO #640410
lpetit@plsma.org
Rebecca Schapiro, BBO #688781
bschapiro@plsma.org

---

[6] Defendants made no effort to find a placement until this Court's Order, despite his pending medical parole petition.  Since then, Defendants have claimed that their medical provider has tried 45 different places, all of which have rejected Mr. Reaves as a patient. (Doc. 343, at 8).  These attempts, managed by an employee of the medical contractor, not by any Defendant familiar with the issues in this case, appear halfhearted; comprised of submissions of old medical records from MCI Shirley rather than current Shattuck records, which reflect Mr. Reaves regularly eating, participating in physical therapy, psychiatric counseling, and accepting bathing care. Ex. 2, Petit Aff., ¶¶ 6, 13.

Prisoners' Legal Services of Massachusetts
10 Winthrop Square, 3d Floor
Boston, MA 02110
(617) 482-2773

Date: March 9, 2020

CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

  */s/ Lauren Petit*
Lauren Petit